**In re Jack Dennis BRADBURY, Debtor.**

**Louis TEPE, Administrative Claimant, Appellant,**

v.

**Kay CLEMENTS, Trustee, Appellee.**

Civ. A. No. 91–K–1351.
Bankruptcy No. 88 B 8932 J.

United States District Court,
D. Colorado.

June 3, 1992.

James W. Bain, Brega & Winters, Denver, Colo., for Tepe.

Kay Clements, Trustee, pro se.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This case is before the court on Louis Tepe's ("claimant") appeal from a decision of the bankruptcy court denying his administrative claim for attorney fees and affirmatively ordering him to disgorge $7700 paid to him as a real estate commission. I have jurisdiction pursuant to 28 U.S.C. § 158(a). I review the factual findings of the bankruptcy court on a clearly erroneous standard and its legal conclusions on a de novo basis. For the reasons discussed below, I affirm the bankruptcy court's decision denying the claim for attorney's fees and reverse the court's order of disgorgement.

I. *Facts and Procedural History*

Jack Bradbury, the debtor below, filed his chapter 7 petition on July 7, 1988. Among his assets was a 10% interest in approximately 65 acres of undeveloped

land located in Eagle County, Colorado. The debtor in his bankruptcy schedules valued the interest at $20,000. The debtor acquired the land in 1972 as a general partner in Aspen 70, Ltd. In 1982, by virtue of the partnership agreement, the partnership dissolved and the partners became tenants-in-common. Claimant is a licensed real estate broker. He is also one of the debtor's former partners and co-tenants. Claimant became sole managing general partner of Aspen 70, Ltd. in 1977. On September 27, 1988, after some period of negotiation, claimant accepted, as listing broker for the co-tenants, an offer from Michael Lipkin to purchase the entire 65 acres for $487,500, or $7,500 per acre. The sellers agreed to pay claimant a 7% broker's fee under the listing agreement. Simultaneously, Lipkin signed a consulting contract with claimant. Its terms required claimant to provide assistance to Lipkin in acquiring a tap agreement on the subject property in return for $15,000. The Lipkin contract did not take into account the bankruptcy estate's 10% interest in the property. To deal with it, Lipkin prepared an addendum ("the fifth addendum") to the sales contract between himself and Aspen 70 which made Lipkin's offer contingent on a sale of the estate's 10% interest to Lipkin at a price of $48,750. Claimant signed the fifth addendum on behalf of himself and the co-tenants.

Shortly before the scheduled closing, claimant learned that Lipkin had recently purchased an adjacent parcel of land at $42,500 per acre, considerably higher than the $7,500 per acre Lipkin was paying to claimant and his co-tenants. The claimant was reluctant to close the sale to Lipkin, but did so under threat of a lawsuit on November 4, 1988. In accordance with the fifth addendum, on November 2, 1988, claimant delivered to the trustee, on behalf of Lipkin, an offer to purchase the estate's 10% interest for $48,7500. The offer was contingent upon payment of a 7% sale's commission to claimant. Jack Lutri, the estate's first bankruptcy trustee, verbally accepted the offer. Claimant signed the listing agreement with the trustee on November 7, 1988. He executed, as the seller's agent and listing broker, the Lipkin contract to purchase on November 14, 1988. The trustee applied for authority to employ claimant on November 18, 1988. The bankruptcy court authorized his employment on December 19, 1988.

In the meantime, on November 8, 1988, claimant made a written offer to the trustee to purchase the estate's 10% interest for $50,000 on behalf of himself and a former co-tenant, James Leeling. The trustee rejected the offer, feeling himself bound by his oral representations to Lipkin. Claimant then had Leeling object to the proposed sale, which caused the bankruptcy court to order sealed bids. The trustee accepted Leeling's bid of $111,000, and the bankruptcy court approved the sale on March 24, 1989. Leeling, in turn, later sold the property to Lipkin for $115,500. Pursuant to the listing agreement, the bankruptcy court entered an order on September 13, 1990 authorizing the trustee to pay the claimant a brokerage fee of $7,700.

Claimant's actions so angered Lipkin that he filed two successive and nearly identical lawsuits against claimant, one in federal district court one in state district court. The gist of both complaints was claimant's interference with Lipkin's rights under the fifth addendum by trying to negotiate separately with the trustee for purchase of the estate's 10% interest. Both were eventually dismissed without any liability against claimant or money changing hands.

On October 24, 1990, Mr. Lutri resigned as trustee of the estate. Kay Clements, Esq., was appointed his successor. On December 6, 1990, the bankruptcy court ordered the new trustee to show cause on December 13, 1990, why she should not be held in contempt for her failure to pay the claimant $7,700. Only the claimant appeared at the show cause hearing. The bankruptcy court held the trustee in contempt and fined her $100 per day until she complied with the original September 13, 1990 order to pay the fee. The bankruptcy court vacated the contempt order on December 24, 1990 upon the U.S. trustee's showing that the trustee had finally paid the claimant on December 14, 1990.

On February 1, 1991, the claimant applied for an administrative claim under paragraph 19 of the listing agreement. It provides for indemnification of the broker "[i]f the broker is not at fault and if a third party asserts a claim against the broker arising out of any act pursuant to the listing contract. . . ." Claimant sought attorney's fees and costs he incurred in defending the two lawsuits Lipkin had filed against him for his role in the sale of the two parcels. He asserted that he had incurred $9,882.27 in attorney's fees and costs in his defense of the two lawsuits.

On May 9, 1991, the trustee objected to claimant's indemnification request. She asserted that the lawsuits did not arise from claimant's obligations under the listing agreement, that claimant never represented the bankruptcy estate, and that he breached his fiduciary obligation to the estate by his actions and omissions in November and December, 1988. The bankruptcy court heard evidence and took testimony on June 10, 1991 and entered a written order on July 22, 1991. It denied claimant's right to compensation under the listing agreement because it found that the lawsuits did not arise under the listing agreement. Furthermore, it affirmatively ordered claimant to repay $7,700 to the estate and awarded fees to the trustee upon an appropriate affidavit. It reasoned that claimant had breached his fiduciary obligation to the estate by not revealing to the trustee that Lipkin had purchased the adjacent parcel for $42,500 per acre, and by his self-dealing in the $50,000 offer he and Leeling made on November 8, 1988. This appeal followed.

## II. *Discussion*

### A. Indemnification

■ I must decide whether, as claimant asserts, the two lawsuits arose from "any act pursuant to the listing agreement" and whether claimant was "at fault" in order for indemnification to be proper. I do not consider these terms to be analogous. That is, I can conceive a situation where the broker might perform an act pursuant to the listing agreement yet still be at fault. Thus, the threshold issue is whether claimant was at fault within the meaning of paragraph 19.

■ Basic principles of contract interpretation and agency guide my decision here. A real estate broker stands in a fiduciary relationship with his principal, the seller. As such, he owes the principal a duty to act with utmost faith and loyalty on behalf of the principal. He must make full and complete disclosure of all facts which might reasonably affect the principal's decision. *Wheeler v. Carl Rabe, Inc.*, 198 Colo. 311, 599 P.2d 902 (1979). He may not take any action or fail to take any action adverse to his principal. Where a contract is clear and unambiguous on its face, the court must give to the terms in dispute their ordinary and common meaning. *Matter of May*, 756 P.2d 362 (Colo.1988).

I find that claimant was at fault within the meaning of the listing agreement. But for claimant's apparent blindness and ignorance of the multiple conflicts he faced, Lipkin would likely not have sued him. Of greatest concern to me is that claimant's actions before December 19, 1988 (the date the bankruptcy court approved the appointment of claimant) were entirely inconsistent with a later fiduciary relationship with the bankruptcy estate. By virtue of the fifth addendum, claimant was bound to procure the estate's interest for $7,500 per acre. His appointment as the estate's listing agent, however, required him to obtain the highest price possible for that same land. These relationships were grossly incompatible. Complicating the conflict was claimant's contractual relationship with Lipkin under the consulting agreement. Actions he took contrary to the fifth addendum jeopardized claimant's ability to carry out his obligation's under the consulting agreement. Finally, I note that claimant never revealed to the bankruptcy trustee that Lipkin had purchased the adjacent parcel for $42,500 per acre. A conflict-free agent and broker would certainly have revealed the sale of the adjacent parcel[1] be-

---

1. Claimant asserts in a supplementary affidavit

that the sale of the adjacent property was not a

cause it so naturally established a comparable sale.

 Claimant asserts that the bankruptcy court erred in finding a breach of his fiduciary obligations to the estate because no fiduciary relationship arose until December 19, 1988 (the date the bankruptcy court approved his appointment as broker). In claimant's view, since any allegedly unethical acts were performed before the date of appointment, there was no breach of his fiduciary obligation. Claimant's argument, however, ignores his ethical obligation to refuse employment which would conflict with a present client or his personal interest. Both interests were implicated here. Although the first 90% transaction closed on November 4, 1988, that transaction was contingent upon Lipkin successfully obtaining the estate's 10% interest for an identical price. Thus, the closing of the co-tenants' 90% interest in the property does not end an inquiry into potential conflicts. I accordingly hold that the bankruptcy court did not err when it refused to indemnify claimant under paragraph nineteen of the listing agreement.

### B. Disgorgement

 Claimant argues that the bankruptcy court erred when it ordered him to disgorge the 7% fee ($7,700) he collected on the sale of the estate's 10% interest. He asserts that he is entitled to the fee because his actions directly benefitted the estate by causing it to receive $44,000 more than it would have received under the original Lipkin offer.

I agree. The hearing before the bankruptcy court on June 10, 1991 was a hearing on the claimant's motion for approval of his administrative claim. It was not before the court as an adversary proceeding under rule 7001 and 11 U.S.C. § 542. Whether claimant breached his fiduciary obligation or not, he had established and the court had approved his right to compensation under the listing agreement with the trustee. The estate still benefitted from the sale to Leeling. For an asset it valued at $20,000, it received $111,000. Whether

true comparable sale. I reject the affidavit be-

the estate might have realized a larger sum with a conflict-free broker was a question not properly before the bankruptcy court. Certainly the trustee could have sought turnover of the brokerage fee on the grounds that claimant had breached his fiduciary obligation to the estate. In such a case, she would have had to prove both the fraud and the damage to the estate. The trustee did not. Absent such a showing in an adversary proceeding, I conclude it was error for the bankruptcy court to order claimant to return the $7,700 brokerage fee.

I accordingly affirm the judgment of the bankruptcy court denying the claimant's right to indemnification under paragraph nineteen of the listing agreement and reverse its decision affirmatively ordering claimant to disgorge $7,700 paid to him under the listing agreement.

cause it was not tested by cross-examination.